UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re                                                      Chapter 11

The Brooklyn Hospital Center
and Caledonian Health Center, Inc.,                        Case No. 05-26990 (CEC)
                                                           and Case No. 05-26992 (CEC)

                                    Debtors.               (Jointly Administered)
---------------------------------------------------------------x


## <u>DECISION</u>


APPEARANCES:

Da'Tekena Barango-Tariah, Esq.          Allyson Rucinski, Esq. &
25 Bond Street                          Kenneth Pasquale, Esq.
2nd Floor                               Stroock & Stroock & Lavan, LLP
Brooklyn, NY 11201                      180 Maiden Lane
                                        New York, NY 10018

*Counsel for Creditors*
                                        *Counsel for the Debtors*




CARLA CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of medical malpractice plaintiffs, E.S., an infant, by his mother and natural guardian, Kim Frazier, and Kim Frazier, individually (the "Movants" or "Creditors"), seeking, pursuant to Rule 4007(b) and § 350(b), to reopen the case of The Brooklyn Hospital Center and Caledonian Health Center, Inc. (the "Debtors") so that the Creditors may obtain a determination of the dischargeability their claim.[1]  Because the Creditors received notice of the bar date, pursuant to Rule 2002(a)(7), the Creditors' claim was discharged pursuant to § 1141(d) upon confirmation of the Plan of Reorganization in this case (Order Confirming Second Am. Joint Ch. 11 Plan of Reorganization, Case No. 05-26990-CEC, ECF No. 1050) and the motion to reopen is denied.

JURISDICTION

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (I), 28 U.S.C. § 1334, and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052.

BACKGROUND

The following facts are undisputed, except as otherwise indicated.

On August 10, 2001, Movants commenced an action against The Brooklyn Hospital Center ("TBHC") in Supreme Court, Kings County, Index No. 29473/2001 (the "State Court Action").  (Mot. to Reopen Ch. 11 Case, Case No. 05-26990-CEC, ECF No. 1387 at 11.)  The State Court Action asserted a claim for medical malpractice allegedly occurring at TBHC in December, 2000. (Mot. to Reopen Ch. 11 Case Ex. A, Case No. 05-26990-CEC, ECF No. 1387-1.)  Movants were represented at that time by the law firm of Sanocki, Newman, & Turret, LLP

---

[1] Unless otherwise noted, statutory references are to the United States Bankruptcy Code, Title 11, U.S.C., and references to Rules are to the Federal Rules of Bankruptcy Procedure.

(the "Sanocki Firm"). <u>Id.</u>  Defense counsel for TBHC at the time was Bartlett, McDonough, Bastone & Monaghan, LLP (the "Bartlett Firm"). (Obj. to Mot. to Reopen, Case No. 05-26990-CEC, ECF No. 1390 at ¶ 4.) The Bartlett Firm served a Verified Answer on November 9, 2001, denying the material allegations in the complaint. <u>Id.</u>  On January 7, 2002, the Sanocki Firm filed a Request for Judicial Intervention on behalf of the Movants; however, no preliminary conference or discovery ever occurred in the State Court Action. <u>Id.</u>

On June 26, 2003, during the pendency of the State Court Action, TBHC commenced a separate action in state court against its insurance carrier, CCC Insurance Company, Ltd. ("CCC"), seeking a declaration that the claims asserted by, <u>inter alia</u>, the Movants were covered by TBHC's insurance policy (the "Coverage Action"). (Decl. of Y. Bar-Kokhba in Supp. of TBHC's Obj., Case No. 05-26990-CEC, ECF No. 1399 at ¶ 2.)  TBHC was represented by Garbarini & Scher, P.C. ("Garbarini") in the Coverage Action. <u>Id.</u> at ¶ 1.  By order of Judge Bernard J. Fried on July 8, 2004, the State Court Action was stayed pending the resolution of the Coverage Action (the "Stay Order"). (Decl. of Y. Bar-Kokhba in Supp. of TBHC's Obj. Ex. A, Case No. 05-26990-CEC, ECF No. 1399-1.)

On August 20, 2004, TBHC, represented by Garbarini, commenced a second action against CCC seeking a declaratory judgment (the "Declaratory Judgment Action") that CCC's rescission of coverage for claims arising between July 1, 2000 and May 17, 2003 was in contravention of TBHC's insurance policy. (Decl. of Y. Bar-Kokhba in Supp. of TBHC's Obj., Case No. 05-26990-CEC, ECF No. 1399 at ¶ 6.)  In the Declaratory Judgment Action, Garbarini joined all plaintiffs in actions arising from claims during that period (the "Covered Actions") as defendants and interested parties, including the Movants. <u>Id.</u>  Shortly thereafter, Garbarini served the Movants with the Summons and Complaint in the Declaratory Judgment Action by first class

mail addressed to the Sanocki Firm. Id. at ¶¶ 7-8.  The Sanocki Firm replied to Garbarini on

August 25, 2004 (the "Sanocki Letter") stating that the Movants were no longer clients of the

firm, and, therefore, the Sanocki Firm could not accept service of process. (Decl. of Y. Bar-

Kokhba in Supp. of TBHC's Obj. Ex. B, Case No. 05-26990-CEC, ECF No. 1399-2)  In the

Sanocki Letter, the Sanocki Firm stated that Movants had retained Mr. Barango-Tariah as

counsel and provided Garbarini with Mr. Barango-Tariah's mailing address. Id.

Upon receiving the Sanocki Letter, Garbarini sent a letter to Mr. Barango-Tariah, dated

August 31, 2004, requesting that he accept service on behalf of the Movants prior to September

10, 2014, to which there was no response. (Obj. to Mot. to Reopen Ex. 2, Case No. 05-26990-

CEC, ECF. No. 1390-2; Decl. of Y. Bar-Kokhba in Supp. of TBHC's Obj. Ex. B, Case No. 05-

26990-CEC, ECF No. 1399 at ¶¶ 11-12.)

On September 8, 2004, CCC removed the Declaratory Judgment Action to the United

States District Court for the Southern District of New York, and on September 28, 2004, TBHC

moved to remand the Declaratory Judgment Action to state court. (Decl. of Y. Bar-Kokhba in

Supp. of TBHC's Obj., Case No. 05-26990-CEC, ECF No. 1399 at ¶¶ 15, 17.)  On February 22,

2005, Judge Thomas P. Griesa denied TBHC's motion to remand and dismissed all the plaintiffs

from the Covered Actions that TBHC had joined in the Declaratory Judgment Action, including,

inter alia, the Movants, from the Declaratory Judgment Action. (Decl. of Y. Bar-Kokhba in

Supp. of TBHC's Obj. Ex. D, Case No. 05-26990-CEC, ECF No. 1399-4.)  On February 24,

2005, following the dismissal of all claims against the Movants in the Declaratory Judgment

Action, Garbarini received a notice of change of address form from Mr. Barango-Tariah bearing

the caption of the Declaratory Judgment Action.  (Decl. of Y. Bar-Kokhba in Supp. of TBHC's

Obj. Ex. E, Case No. 05-26990-CEC, ECF No. 1399-5.)  The letter did not state or otherwise indicate that Mr. Barango-Tariah represented the Movants. Id.

Following the dismissal of the claims asserted against them in the Declaratory Judgment Action, multiple plaintiffs from the Covered Actions moved to vacate the Stay Order issued in the Coverage Action, and on May 9, 2005, Justice Fried vacated the stay (the "Order to Vacate"). (Decl. of Y. Bar-Kokhba in Supp. of TBHC's Obj., Case No. 05-26990-CEC, ECF No. 1399 at ¶¶ 20-21; Obj. to Mot. to Reopen Ex. 3, Case No. 05-26990-CEC, ECF. No. 1390-3.)

On June 3, 2005, Mr. Barango-Tariah filed a Consent to Change Attorney affidavit in the State Court Action (the "Change of Attorney Form"), stating that Mr. Barango-Tariah had replaced the Sanocki Firm as the attorney of record for the Movants in the State Court Action. (Mot. to Reopen Ch. 11 Case Ex. D, Case No. 05-26990-CEC, ECF No. 1387-1.)  However, neither Mr. Barango-Tariah, the Sanocki Firm, nor the Movants served the Change of Attorney Form on the Bartlett Firm or otherwise provided TBHC or the Bartlett Firm with notice of the change. (Mot. to Reopen Ch. 11 Case, Case No. 05-26990-CEC, ECF No. 1387 at ¶ 11; Obj. to Mot. to Reopen Ex. 4, Case No. 05-26990-CEC, ECF No. 1390-4.)  The affidavit of service accompanying the Change of Attorney Form, dated May 5, 2005, indicates that the Change of Attorney Form was served by mail on Bonina & Bonina, P.C. ("Bonina"), counsel to several other plaintiffs against TBHC in Covered Actions, and the Sanocki Firm. (Obj. to Mot. to Reopen Ex. 4, Case No. 05-26990-CEC, ECF No. 1390-4; Decl. of R. Matra in Supp. of TBHC's Obj., Case No. 05-26990-CEC, ECF No. 1398 at ¶ 6.)  Other than filing the Change of Attorney Form, Mr. Barango-Tariah did not take any steps to litigate the State Court Action after the Order to Vacate was entered for more than six years, until, in December, 2011, he made a

request for a preliminary conference. (Decl. of R. Matra in Supp. of TBHC's Obj., Case No. 05-26990-CEC, ECF No. 1398 at ¶ 5.)

In the meantime, on June 14, 2005, Garbarini received a letter from Bonina (the "Bonina Letter"), advising Garbarini of a request for a settlement conference regarding the Covered Actions. (Mem. in Supp. of Mot. to Reopen Ex. K, Case No. 05-26990-CEC, ECF No. 1394.) The Bonina Letter included an attachment which listed the Covered Actions still pending, including the Movants' State Court Action. Id. Within the information about the Movants' State Court Action, the Sanocki Firm was listed as Movants' counsel. (Id., Ex. A of the Bonina Letter, at 9.) On June 29, 2005, Garbarini responded to the Bonina Letter (the "Garbarini Response"), stating that TBHC had no objection to the proposed settlement conference and indicating that Garbarini would participate in the conference if necessary. (Mem. in Supp. of Mot. to Reopen Ex. J, Case No. 05-26990-CEC, ECF No. 1394.) The Garbarini Response was mailed to over seventy different recipients representing plaintiffs in the Covered Actions, including the Movants, in care of Mr. Barango-Tariah. Id. Despite Mr. Barango-Tariah's receipt of both the Bonina Letter and the Garbarini Response regarding the proposed settlement conference, nothing in the record indicates that he either responded to the letter or participated in any settlement conference.

The Debtors commenced this case under chapter 11 of the Bankruptcy Code on September 30, 2005 (the "Petition Date"). (Voluntary Pet., Case No. 05-26990-CEC, ECF No. 1.) On October 21, 2005, the Debtors served the Movants by first class mail with notice of the commencement of the case, addressed to E.S. c/o Sanocki, Newman & Turret, LLP, 225 Broadway 8th Floor, New York, NY 10007.[2] (Aff. of Mailing, Case No. 05-26990-CEC, ECF

---

[2] The first name of E.S. for all mailings made by the Debtors is missing one letter. (Decl. of D. Streany in Supp. of TBHC's Obj., Case No. 05-26990-CEC, ECF No. 1401 at ¶ 4.)

No. 72.)  On December 29, 2005, Debtors filed a Schedule F listing creditors holding unsecured, nonpriority claims, which identified E.S. as a creditor, having an address in care of the Sanocki Firm. (Schedule F, Case No. 05-26990-CEC, ECF No. 172-16 at 7.)  By order dated February 7, 2006, the Bankruptcy Court established April 21, 2006 at 4:00 p.m. EST as the time by which all claimants asserting pre-petition claims against the Debtors were required to file a proof of claim (the "Bar Date Order").  (Order Establishing Deadline for Filing Proofs of Claim, Case No. 05-26990-CEC, ECF No. 208.)  The Bar Date Order specified that notice "shall be deemed adequate and sufficient if served by first class mail on or before five (5) business days after entry of this Order, upon [inter alia] . . . (E) all parties to litigation with the Debtors and all parties who had notified the Debtors in the two (2) years prior to the Petition Date regarding potential medical malpractice claims against the Debtors, or their respective counsel, if known . . . ." Id. at 5.  On February 14, 2006, notice of the Bar Date Order was mailed via first class mail to E.S. c/o Sanocki, Newman & Turret, LLP, 225 Broadway 8th Floor, New York, NY 10007. (Aff. of Mailing, Case No. 05-26990-CEC, ECF No. 216-4.)

The mailing list used for the above mailings was prepared by Epiq Bankruptcy Solutions ("Epiq") based on a list, obtained from CCC, of all pending claims against TBHC that CCC was defending. (Decl. of D. Thomas in Supp. of TBHC's Obj., Case No. 05-26990-CEC, ECF No. 1397 at ¶¶ 12, 18-21.)  Epiq received quarterly updates of this information and incorporated those updates in subsequent mailing lists. Id. at ¶¶ 15, 18.  Each mailing list generated by Epiq included E.S. c/o the Sanocki Firm. Id. at ¶ 22.  No mailing sent to the Sanocki Firm on behalf of E.S. was ever returned as undeliverable and the Sanocki Firm never notified TBHC, in response to the bankruptcy notices, that E.S. was no longer a client of the firm. (Decl. of D. Streany in Supp. of TBHC's Obj., Case No. 05-26990-CEC, ECF No. 1401 at ¶ 4.)

Although the Bar Date Order was mailed to the Sanocki Firm, neither of the Movants filed a proof of claim in this case; however, other claimants represented by the Sanocki Firm did file proofs of claim. Id. at ¶¶ 4-5. As of April 21, 2006 (the "Bar Date"), the Movants' claim against TBHC was barred. (Order Establishing Deadline for Filing Proofs of Claim, Case No. 05-26990-CEC, ECF No. 208.)

On September 12, 2007, the court confirmed a plan of reorganization (the "Confirmed Plan"), without objection by the Movants, and that plan became effective on October 19, 2007. (Not. Of Effective Date, Case No. 05-26990-CEC, ECF No. 1173.) Under the Confirmed Plan, all claims against the Debtors were discharged, and all medical malpractice claims against the Debtors filed prior to the Bar Date were eligible for distributions.[3] (Second Am. Ch. 11 Plan, Case No. 05-26990-CEC, ECF No. 1046 at § 5.07.) Medical malpractice claimants that failed to file a timely proof of claim were not entitled to any recovery. Id. On September 1, 2011, a Final Decree was issued and the chapter 11 case was closed. (Final Decree Closing the Ch. 11 Case of TBHC, Case No. 05-26990-CEC, ECF No. 1386.)

On December 22, 2011, Mr. Barango-Tariah, on behalf of the Movants, sent a letter to the Bartlett Firm, including copies of a Request for Preliminary Conference, the Change of Attorney Form, and the Order to Vacate issued in the Coverage Action on May 9, 2005. (Obj. to Mot. to Reopen Ex. 3, Case No. 05-26990-CEC, ECF No. 1390-3.) In or about May, 2012, Kaufman, Borgeest, & Ryan LLP (the "Kaufman Firm") was substituted for the Bartlett Firm as counsel to TBHC in the State Court Action. (Decl. of R. Matra in Supp. of TBHC's Obj., Case No. 05-26990-CEC, ECF No. 1398 at ¶ 2.) On multiple occasions between May 2012 and January 2013, the Kaufman Firm advised Mr. Barango-Tariah that the Movants' claim in the

---

[3] All of the approximately $22 million set aside for the satisfaction of the Debtors' medical malpractice claims arising after June 1, 2006, has been distributed. (Mot. for Order Entering Final Decree, Case No. 05-26990-CEC, ECF No. 1378 at ¶ 19; Tr. of Hr'g on May 13, 2014, Case No. 05-26990-CEC, ECF No. 1406 at 37-38.)

State Court Action was barred and discharged and requested that the Movants discontinue the State Court Action. (Obj. to Mot. to Reopen, Case No. 05-26990-CEC, ECF No. 1390 at ¶ 36.) On March 5, 2013 TBHC moved to dismiss the State Court Action on the grounds that the claims were discharged in the Debtors' bankruptcy, and the state court stayed proceedings in the State Court Action on June 26, 2013 to allow the Movants to file a motion in this Court to determine the dischargeability of its claims. Id. at ¶ 37. On January 27, 2014 the Movants filed a motion to reopen the Debtors' chapter 11 case to seek a determination on the dischargeability of their claim. (Mot. to Reopen Ch. 11 Case, Case No. 05-26990-CEC, ECF No. 1387.)

This Court held a hearing on March 12, 2014 on the Motion to Reopen the Debtors' Chapter 11 Case, after which the Court allowed both parties to file additional submissions. On May 13, 2014, an additional hearing was held.

<u>ARGUMENTS</u>

The Movants argue that their claim was not discharged because the Movants never received actual notice of either the Debtors' chapter 11 case or the subsequent Bar Date Order. The Movants contend that TBHC's notice to the Sanocki Firm on behalf of the Movants was insufficient because TBHC either knew or should have known that Mr. Barango-Tariah, and not the Sanocki Firm, represented the Movants. The Movants allege that (1) the Change of Attorney Form filed in the State Court Action provided TBHC with actual notice of the Movants' change of counsel and (2) Garbarini's correspondence with both the Sanocki Firm and Mr. Barango-Tariah on behalf of TBHC shows that Garbarini, and, by extension, TBHC, had notice that Mr. Barango-Tariah represented the Movants in the State Court Action.

TBHC asserts that the notice provided to the Sanocki Firm was reasonable notice to the Movants of the Bankruptcy and Bar Date Order, and that Movants' claim was therefore

discharged upon confirmation of the Debtors' Plan of Reorganization.  11 U.S.C. § 1141(d) ("[T]he confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation . . . .").  TBHC argues that (1) Movants' failure to comply with New York Civil Practice Law and Rules ("CPLR") § 321(b) requiring that notice of any change of attorney in the State Court Action be provided to all parties to the case rendered any purported change of counsel in the State Court Action ineffective, and that the Movants' filing of the Change of Attorney Form did not constitute actual or constructive notice to TBHC; and (2) any correspondence that Mr. Barango-Tariah had with Garbarini—as counsel for TBHC in the Coverage Action and Declaratory Judgment Action—does not constitute constructive notice to TBHC of any change of counsel in the State Court Action.

DISCUSSION

The decision to reopen a closed chapter 11 case is within the discretion of the Bankruptcy Court.  In re Emmerling, 223 B.R. 860, 864 (B.A.P. 2d Cir. 1997).  When a Bankruptcy Court is weighing whether to grant a motion to reopen, the movant bears the burden of demonstrating cause for reopening the case.  In re PlusFunds Group, Inc., 492 B.R. 202, 208-09 (Bankr. S.D.N.Y. 2013).  Several factors may be considered by the Court when making this decision, including whether it is clear that no relief would result from granting the motion to reopen.  In re Easley-Brooks, 487 B.R. 400, 407 (Bankr. S.D.N.Y. 2013) (citation omitted).

In support of its motion to reopen the case, the Movants contend that their claim was not subject to the Bar Date and was not discharged by the Confirmed Plan because TBHC failed to provide Movants with actual notice of either order.  Although a debtor is required to notify all known creditors of both the bankruptcy case and the bar date, In re Enron Corp., No. 01-16034 (AJG), 2006 WL 898031, at *4 (Bankr. S.D.N.Y. Mar. 29, 2006) ("The Due Process Clause in

the Fifth Amendment to the United States Constitution requires that creditors receive notice of the filing of the bankruptcy case and the bar date in order to afford creditors the opportunity to file a proof of claim."), only reasonable notice is required to bar an untimely claim. In re Nutri*Bevco, Inc., 117 B.R. 771, 779 (Bankr. S.D.N.Y. 1990) ("A creditor's claim can be barred for untimeliness only upon a showing that it received reasonable notice.") (quoting Matter of Robintech, Inc., 863 F.2d 393, 396 (5th Cir. 1989).  Under Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), "notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." Where a creditor was provided with reasonable notice of both the bankruptcy case and the bar date, the creditor's claim may be discharged under § 1141, even if the creditor had no actual knowledge of either. See  DPWN Holdings (USA), Inc. v. United Air Lines, Inc., 747 F.3d 145, 150 (2d Cir. 2014).  However, where the standard set by the Supreme Court in Mullane for notice required under the Due Process Clause in chapter 11 cases has not been met, the claim is not subject to the bar date order and is not discharged by the confirmation order. Id.; Chemetron Corp v. Jones, 72 F.3d 341, 345-346 (3d Cir. 1995).

### A.    The Reasonableness of TBHC's Notice to E.S. c/o the Sanocki Firm

A debtor is not required to provide actual notice to every creditor; rather, a debtor is only required to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to [respond]." Mullane, 339 U.S. at 314 ("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."); DPWN Holdings, 747 F.3d at 150 ("[T]he reasonableness of the notice . . . [is] a flexible standard that often turns on what the debtor or the claimant knew about the claim or, with reasonable diligence, should have known.").

Reasonable notice—even to a known creditor—does not require actual receipt of notice by the creditor. Weigner v. City of New York, 852 F.2d 646, 651 (2d Cir. 1988) ("The Supreme Court has repeatedly held that notice by first-class mail is sufficient, notwithstanding the Court's obvious awareness that not every first-class letter is received by the addressee."); In re Nutri*Bevco, Inc., 117 B.R. at 781 (finding actual timely notice when failure to receive notice was due solely to creditor's actions).

Service of notice to an attorney that represents a creditor may constitute notice to that creditor. In re Herman, 737 F.3d 449, 454 (7th Cir. 2013). For notice to a claimant's attorney in lieu of the claimant to be reasonable, there must be "a sufficient nexus between the creditor's retention of an attorney and the creditor's claim against the debtor." Id. (quoting In re Najjar, No. 06-10895 (AJG), 2007 WL 1395399, at *4 (Bankr. S.D.N.Y. May 11, 2007)). A sufficient nexus exists when the attorney is representing the creditor in an action to collect the debt sought to be discharged. In re Elias, No. 13-cv-01269 (CBA), 2014 WL 1248042, at *5 (E.D.N.Y. March 24, 2014); In re Linzer, 264 B.R. 243, 249 (Bankr. E.D.N.Y. 2001) ("[W]hen a non-bankruptcy counsel is actively engaged in prosecuting a creditor's claim against the debtor before a non-bankruptcy tribunal . . . that is a sufficient nexus to the bankruptcy case to justify imputing authorized agency.").

In In re Elias, the court held that notice to a creditor in care of the creditor's attorney was sufficient notice to bar an untimely action by that creditor to seek the nondischargeability of the same debt. In re Elias, 2014 WL 1248042, at *5. The Elias court focused on the fact that the creditor's attorney represented the creditor in an action against the debtor and that "each issue[ argued in the state court action] directly related to the debts sought to be discharged in this bankruptcy proceeding," in finding that notice to the creditor's attorney was sufficient notice to

the creditor. Id. at *5-6 ("In those circumstances, the notice afforded to [the creditor's attorney] can fairly be imputed to [the creditor]. . .")

A debtor has no obligation to search court records to ascertain a creditor's or an attorney's current address; notice to a known creditor is sufficient if provided to the address shown in the debtor's books and records. Chemetron Corp. v. Jones, 72 F.3d 341, 347 (3d Cir. 1995) ("[W]hat is required is not a vast, open-ended investigation . . . The requisite search instead focuses on the debtor's own books and records.  Efforts beyond a careful examination of these documents are generally not required."); accord. In re Sudano, Inc., 391 B.R. 678, 688 (Bankr. E.D.N.Y. 2008) (same); In re Best Prods. Co., 140 B.R. 353, 358 (Bankr. S.D.N.Y. 1992) (holding that a debtor is not required to search beyond its own books and records).  TBHC noticed E.S. c/o the Sanocki Firm—the Movants' attorney of record as of the Petition Date. Nothing in the record indicates that TBHC had in its records another address for the Movants at the time of the bankruptcy.  Similarly, neither TBHC nor its agents received any indication that the Sanocki Firm did not receive the mailed notices.  None of the notices sent to E.S. c/o the Sanocki Firm was returned as undeliverable, and the Sanocki Firm took no steps to alert TBHC, its bankruptcy counsel, or its counsel in the State Court Action that the Sanocki Firm no longer represented the Movants.

The Movants allege that the Bar Date Order also required notice to Kim Frazier as co-plaintiff because the State Court Action lists Ms. Frazier both as guardian of E.S. and in an individual capacity. (Mot. to Reopen Ch. 11 Case, Case No. 05-26990-CEC, ECF No. 1387 at ¶ 9.)  However, the Sanocki Firm would have been required to inform Ms. Frazier of any notice received c/o E.S. because E.S. is represented by Ms. Frazier as guardian and communication with E.S. directly would be inappropriate. See N.Y. C.P.L.R. § 1201 (McKinney 2014).  Thus,

any actual notice sent to E.S. would necessarily be actual notice to Ms. Frazier as well. See In re Rice, Adv. Pro. No. 09-00014-5-JRL, 2010 WL 749814, at *3 (Bankr. E.D.N.C. Mar. 1, 2010) (finding notice to counsel in care of the corporation was sufficient notice on corporation's representative and co-plaintiff).

Additionally, the Movants object to the adequacy of the notice of the Bar Date sent to the Sanocki Firm on the ground that the first name of E.S. is misspelled. (Mot. to Reopen Ch. 11 Case, Case No. 05-26990-CEC, ECF No. 1387 at ¶ 14.)  This misspelling does not affect the presumption that the Sanocki Firm (whose name and address were spelled correctly) received the notice, nor given the de minimis nature of the error, omitting "y" in E.S.'s first name, does it raise any question whether the Sanocki Firm was adequately informed to which of its clients this notice related. Hoffenberg v. C.I.R., 905 F.2d 665, 666 (2d Cir. 1990) ("A properly addressed piece of mail placed in the care of the Postal Service is presumed to have been delivered."); In re Horton, 149 B.R. 49, 57-58 (Bankr. S.D.N.Y. 1992) (refusing to weaken the presumption of receipt of mail when the address was correct).  If the Sanocki Firm had any question in this regard, it could have checked its list of client having claims against TBHC, or contacted TBHC for the index number of the action.[4]

Although TBHC and its counsel in the State Court Action had no actual knowledge of the Movants' change of counsel, the Movants contend that the notices to the Sanocki Firm were

---

[4] The Movants have produced an unsworn letter from the Sanocki Firm stating that the entire file for the State Court Action was forwarded to Mr. Barango-Tariah on February 14, 2005, and that no record exists of the receipt of a document on behalf of the Movants after that date.  (Mot. to Reopen Ch. 11 Case Ex. F, Case No. 05-26990-CEC, ECF No. 1387) Even if this letter were in the form of a sworn affidavit, these facts alone are insufficient to rebut the presumption of receipt that arises from a first-class mailing in New York. Meckel v. Cont'l Res. Co., 758 F.2d 811, 817 (2d Cir. 1985) ("New York law holds that when, as here, there is proof of the office procedure followed in a regular course of business, and these procedures establish that the required notice has been properly addressed and mailed, a presumption arises that notice was received. The mere denial of receipt does not rebut that presumption."); accord. In re Robinson, 228 B.R. 75, 82 (Bankr. E.D.N.Y. 1998); In re Malandra, 206 B.R. 667, 672 (Bankr. E.D.N.Y. 1997).

insufficient under the circumstances because TBHC had constructive notice of the change of attorneys.

**B.      The Actions Taken by Mr. Barango-Tariah Do Not Constitute Constructive Notice to TBHC of the Movants Change of Counsel**

The Movants argue that TBHC failed to satisfy the reasonableness standard set forth in Mullane by mailing notice to the Sanocki Firm because TBHC should have known that the Movants were represented by Mr. Barango-Tariah at the time of the filing of the petition.  The Movants allege that (1) the Change of Attorney Form filed in the State Court Action put TBHC—through the Bartlett Firm—on notice that Mr. Barango-Tariah, not the Sanocki Firm, represented the Movants in that action and (2) correspondence sent and received in the Declaratory Judgment Action by Garbarini—on behalf of TBHC—shows that TBHC knew that the Movants had retained new counsel.  The Movants' arguments are unpersuasive, and will be addressed in turn.

*(1)      Whether the Filing of the Change of Attorney Form in the State Court Action Was Sufficient to Put TBHC on Notice*

Under New York CPLR § 321(b)(1),

> [A]n attorney of record may be changed by filing with the clerk a consent to the change signed by the retiring attorney and signed and acknowledged by the party. Notice of such change of attorney shall be given to the attorneys for all parties in the action or, if a party appears without an attorney, to the party.

New York courts have strictly interpreted § 321(b)(1) to require both filing with the court and notice to all parties in order to ensure proper representation and transparency in the litigation process. Hess v. Tyszko, 46 A.D.2d 980, 980 (N.Y. Sup. Ct. App. Div. 3d Dep't 1974) ("Until an attorney of record is discharged in the manner provided by law [in CPLR § 321(b)] . . . , the attorney [of record] represents the party [and] service of papers upon the attorney is service upon the party. . . ."); Eveready Ins. Co. v. DeLeon, 287 A.D.2d 536, 537 (2d Dep't 2001) ("Because

the appellant was not in receipt of a duly-executed consent to change attorney form or court order substituting counsel in accordance with CPLR 321, it was proper to mail the notice of disclaimer to the attorney of record."). "Until an attorney of record withdraws or is changed or discharged in the manner prescribed by CPLR 321, his authority as attorney of record for his client continues, as to adverse parties, unabated . . . This principle has generally been applied to afford protection to adverse parties, by eliminating disputes and uncertainty as to whether and when the authority of an attorney representing an opponent terminated." Moustakas v. Bouloukos, 112 A.D.2d 981, 983 (2d Dep't 1985) (citations omitted); accord. Eveready Ins. Co. v. DeLeon, 287 A.D.2d 536, 537 (2d Dep't 2001); Candeloro v. Candeloro, 133 A.D.2d 731, 732 (2d Dep't 1987).

Though Mr. Barango-Tariah filed a Change of Attorney Form in the State Court Action on June 3, 2005, notice of the change of attorney was not provided to the attorneys for TBHC as required by NY CPLR § 321(b)(1). For unexplained reasons, the notice of Change of Attorney Form was served on Bonina and the Sanocki Firm—which was not required by § 321(b)(1)—but not the Bartlett Firm, which was required to be given notice of the Movants' change of attorney in the State Court Action. Absent notice in accordance with § 321(b), the Sanocki Firm continued as attorney of record for the Movants in the State Court Action as to TBHC. See Hess, 46 A.D.2d at 980 ("Until an attorney of record is discharged in the manner provided by law [in CPLR § 321(b)] . . . , the attorney [of record] represents the party [and] service of papers upon the attorney is service upon the party. . . ."). Thus, under New York law, TBHC was entitled to send to Movants by service on the Sanocki Firm unless and until the provisions of § 321(b)(1) were complied with. See Armand v. Raman, 96 A.D.3d 510, 510-11 (N.Y. Sup. Ct. App. Div. 1st Dep't 2012) ("Defendants correctly served their notice of motion for summary judgment

upon plaintiff's former counsel, which continues as her attorney of record, given that plaintiff failed to change counsel in the manner prescribed by CPLR 321(b)(1).").

Movants argue that TBHC had constructive notice of the change of counsel in the State Court Action because of the Sanocki Letter sent to Garbarini and the change of address form bearing the caption of the Declaratory Judgment Action sent by Mr. Barango-Tariah after the dismissal of the claims against the Movants in that case.  Such notice (if indeed it constituted notice) was clearly insufficient under CPLR § 321(b)(1).[5]  Nor does it make any sense, based upon this limited correspondence, to argue that Garbarini had a duty to inform TBHC or the Bartlett Firm that a change of counsel had taken place in the State Court Action.  First of all, under CPLR § 321(b)(1), change of counsel is not effective until noticed on counsel in the action, so Garbarini would have been incorrect had they told TBHC or the Bartlett Firm that counsel had changed in the State Court Action.  Moreover, given the requirements of CPLR § 321, it would be reasonable for Garbarini to assume that notice of any change of attorney had been given to the Bartlett Firm in the State Court Action, and reasonable for TBHC to give notice of the bankruptcy proceedings to the Sanocki Firm, which continued as attorney of record in the State Court Action until notice of the change of attorney was served on TBHC's counsel in 2011. See e.g., Moustakas v. Bouloukos, 112 A.D.2d 981, 983 (2d Dep't 1985) ("Until an attorney of record withdraws or is changed or discharged in the manner prescribed in CPLR 321, his authority as attorney of record for his client continues, as to adverse parties, unabated."); Eveready Ins. Co. v. DeLeon, 287 A.D.2d 536, 537 (2d Dep't 2001) (same).

---

[5] These communications also pre-date both the signing of the Change of Attorney Form by the Sanocki Firm and the filing of the form in the State Court Action.

***(2)*** ***Whether Garbarini's Correspondence With the Sanocki Firm and Mr. Barango-Tariah***
***are Sufficient to Constructively Notify TBHC of The Movants Change of Counsel***

While Garbarini's communications with the Sanocki Firm and Mr. Barango-Tariah in
2005 were insufficient as a matter of law to satisfy the notice requirement of NY CPLR § 321(b),
they may, nonetheless, be considered in determining whether the TBHC's notice to the Sanocki
was unreasonable under the circumstances.  See generally, Mullane v. Central Hanover Bank &
Trust Co., 339 U.S. 306, 314 (1950).

Although the Sanocki Letter stated that the Movants had retained Mr. Barango-Tariah to
represent them, Mr. Barango-Tariah never confirmed to Garbarini in any correspondence that he
represented the Movants, either in the Declaratory Judgment Action or the State Court Action.
Garbarini reached out to Mr. Barango-Tariah by letter after receiving the Sanocki Letter but
never received a response.  The only communication that Garbarini received from Mr. Barango-
Tariah was a change of address notice sent nearly six months after Garbarini's letter to Mr.
Barango-Tariah.  Not only did this notice fail to reference any connection between Mr. Barango-
Tariah and the Movants, it was received on February 24, 2005, two days *after* the Movants were
dismissed from the Declaratory Judgment Motion on February 22, 2005.[6]  The Movants were
never served as defendants in that action, and, after the dismissal of all defendants who were
involved in the Covered Actions, there was no reason for Garbarini to notify any party of Mr.
Barango-Tariah's change of address.

---

[6] Although Movants allege that the change of address notice was served on February 3, 2005—the date of Mr.
Barango-Tariah's signature—TBHC maintains that the notice was received on February 24, 2005—the date of
receipt stamped on the original copy. Compare Mem. in Supp. of Mot. to Reopen Ex. I, Case No. 05-26990-CEC,
ECF No. 1394, with Decl. of Y. Bar-Kokhba in Supp. of TBHC's Obj. Ex. E, Case No. 05-26990-CEC, ECF No.
1399-5.  Given that Movants have not directly disputed that the notice was received on the later date, and have failed
to provide documentary evidence that the change of address notice was actually served on February 3, 2005, this
Court accepts the February 24, 2005 date of receipt for this notice.  Nonetheless, receipt of the change of notice by
Garbarini would be insufficient to constitute constructive notice to TBHC had it been received on either date.

The exchange between Bonina and Garbarini is similarly insufficient to provide constructive notice to TBHC of Movants' change of counsel.  Whether Bonina, counsel to plaintiffs in other medical malpractice claims against TBHC, had knowledge of Mr. Barango-Tariah's representation of the Movants in the State Court Action is irrelevant to the determination whether TBHC had knowledge.  Furthermore, the summary attached to Bonina's letter of all medical malpractice cases pending against TBHC for the relevant period still listed the Sanocki Firm as counsel to the Movants.  The addition of E.S.'s name to the mailing address of Mr. Barango-Tariah in the Garbarini Response does not show that Garbarini knew that Movants had changed representation in the State Court Action.  Mr. Barango-Tariah never informed or confirmed to Garbarini, in response to that firm's inquiry, that he represented the Movants, and never appeared in the Declaratory Judgment Action.  Moreover, given the requirement of CPLR § 321(b) that notice of any change of attorney be provided to opposing counsel, it would be reasonable for Garbarini and TBHC to assume that Mr. Barango-Tariah, even if he had been associated with the Movants in some capacity in the Declaratory Judgment Action, was not counsel to Movants in the State Court Action.[7]  Therefore, TBHC acted reasonably in providing notice to the Sanocki Firm as attorney of record for the Movants in the State Court Action. In re Elias, No. 13-cv-01269 (CBA), 2014 WL 1248042, at *5 (E.D.N.Y. March 24, 2014).[8]

**C.    The Prejudicial Effect of the Movants' Delay in Pursuing the State Court Action**

The Movants have failed to provide any explanation justifying why no steps were taken to litigate in the State Court Action between May 9, 2005, when the stay of the State Court

---

[7] Several plaintiffs in the Covered Actions retained separate counsel for purposes of the Declaratory Judgment Action. Tr. of Hr'g on May 13, 2014, Case No. 05-26990-CEC, ECF No. 1406 at 3:21-23.

[8] Upon receiving the Bonina Letter, which showed the Sanocki Firm as counsel to the Movants, Mr. Barango-Tariah could have followed up and corrected his error by properly serving the Change of Attorney Form.

Action issued in the Coverage Action was vacated, and December 22, 2011, when Mr. Barango-Tariah sent a letter to the Bartlett Firm requesting a preliminary conference. Prior to the Stay Order, the State Court Action had not progressed past the pleadings stage and no discovery had yet occurred. Had any attempt been made by Mr. Barango-Tariah to litigate the State Court Action in the years following the Order to Vacate, TBHC would have been learned of his representation of the Movants and would have been able to inform him of the pending chapter 11 case. However, no such attempt was made, and the funds set aside in TBHC's chapter 11 case to satisfy medical malpractice claims have been fully distributed. It is not possible at this juncture to simply permit Movants to participate in the distribution with other medical malpractice claimants, who received approximately 48% of their allowed claims. Tr. of Hr'g on May 13, 2014, Case No. 05-26990-CEC, ECF No. 1406 at 22:7; Final Decree Closing the Ch. 11 Case of TBHC, Case No. 05-26990-CEC, ECF No. 1386. As a result of the Movants' unreasonable delay, if they are successful on this motion, their claim will be nondischargeable, and reorganized TBHC will be fully liable for it.

Given these facts, the doctrine of laches also supports the conclusion that this motion should be denied. In re John's Meat Emporium, Inc., 176 B.R. 700, 704 (Bankr. E.D.N.Y. 1995) ("The doctrine of laches in bankruptcy was considered by the Second Circuit, which set forth the following essential factors: (1) proof of delay in asserting a claim despite the opportunity to do so, (2) lack of knowledge on the part of the party against which the claim would be asserted, and (3) prejudice to that party by the allowance of the claim."); Indian Motorcycle Assocs., Inc. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Grp., Inc.), 157 B.R. 532, 538 (S.D.N.Y. 1993) ("The doctrine of laches asks whether the [claimant] in asserting [its] rights was guilty of unreasonable delay that prejudiced the [party against which the claim is being

asserted].") (quotations omitted); In re Decko Prods., Inc., 73 B.R. 275, 276 (Bankr. N.D. Ohio 1987) (finding a claim barred by laches when the creditor failed to provide an adequate reason for a delay in filing of over two years and where allowing the claim would be inequitable to both the debtor and other unsecured creditors).

<u>CONCLUSION</u>

Because, for the foregoing reasons, Movants' claims have been discharged pursuant to § 1141(d) of the Bankruptcy Code, their motion is denied.  A separate order will issue.



**Dated: Brooklyn, New York**
**August 8, 2014**

**Carla E. Craig**
**United States Bankruptcy Judge**